# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **USHERBS LLC**<br>4357 64th St. Southwest<br>Grandville, Michigan 49418 | **Case No.: 1:15-cv-2557** |
| **And** | **Judge:** |
| **MATI KARNI**<br>4357 64th St. Southwest<br>Grandville, Michigan 49418 | **Magistrate Judge:** |
| **And** | |
| **KARNI FAMILY FARM, LLC**<br>4357 64th St. Southwest<br>Grandville, Michigan 49418 | **JURY DEMAND ENDORSED HEREON** |
| **And** | |
| **US HERBS CO., LLC**<br>4357 64th St. Southwest<br>Grandville, Michigan 49418 | |
|     Plaintiffs, | |
| v. | |
| **RIVERSIDE PARTNERS, LLC**<br>50 Public Square, 29th Floor<br>Cleveland, Ohio 44113 | |
| **And** | |
| **2003 RIVERSIDE CAPITAL<br>APPRECIATION FUND, L.P.**<br>C/O The Corporation Trust Company,<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 | |
| **And** | |

**ROCKET FARMS HERBS, INC.**
C/O Charles Kosmont,
360 Espinosa Road
Salinas, California 93907

      **Jointly and Severally, Defendants.**

## COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF

      The following allegations are based upon Plaintiffs' personal knowledge, the investigation of counsel, and information and belief.  Plaintiffs, through counsel, allege as follows:

### INTRODUCTION

      1.     Plaintiffs US Herbs LLC, Mati Karni, Karni Family Farm, LLC, and US Herbs Co., LLC, Lake Michigan Herbs (hereinafter collectively "US Herbs") were the owners and operators of a farm which grew, packaged and supplied fresh herbs to a variety of national and local supermarkets.  The business was operated as a family business by Plaintiff Mati Karni and his wife Debbie Karni.  After the death of Mrs. Karni, US Herbs contracted with Herb Thyme Farms, Inc. (hereinafter "H. Thyme") for H. Thyme to supply fresh herbs to US Herbs' customers.

      2.     H. Thyme failed to disclose preexisting business disputes between H. Thyme and US Herbs' customers, failed to disclose that H. Thyme was the subject of a class action lawsuit which alleged H. Thyme mislabeled and sold fresh herbs grown in conventional, non-organic farms as USDA certified organic, failed to make payment to US Herbs under the contract, and delivered poor quality herbs to US Herbs' clients.  As a result, within 2-3 months into the agreement US Herbs lost 65% of its customers and US Herbs' farm was forced into foreclosure.

2

3. Subsequently, Rocket Farms Herbs, Inc. purchased H. Thyme and continued to distribute to US Herbs' customers without making any payment to US Herbs.  As a result, US Herbs' business was destroyed and Mr. Karni lost his livelihood and way of life.

## JURISDICTION AND PARTIES

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

5. US Herbs LLC is a Florida limited liability company which maintains its primary place of business at 4357 64th St. Southwest, Grandville, Michigan 49418.

6. Karni Family Farm, LLC is a Michigan limited liability company which maintains its primary place of business at 4357 64th St. Southwest, Grandville, Michigan 49418.

7. US Herbs Co., LLC is a Michigan limited liability company which maintains its principal place of business at 4357 64th St. Southwest, Grandville, Michigan 49418.

8. Mati Karni is natural person and maintains his primary place of business at 4357 64th St. Southwest, Grandville, Michigan 49418.

9. US Herbs LLC, Karni Family Farm, LLC, US Herbs Co., LLC and Mati Karni collectively do business as US Herbs. (hereinafter collectively "US Herbs").

10. 2003 Riverside Capital Appreciation Fund, L.P. is a Delaware limited partnership which maintains its primary place of business at 50 Public Square, 29th Floor, Cleveland, Ohio 44113.

11. 2003 Riverside Capital Appreciation Fund, L.P.  is a subsidiary of Riverside Partners L.L.C.

12. Riverside Partners L.L.C. is a Delaware limited liability company which does business as The Riverside Company and maintains its primary place of business at 50 Public Square, 29th Floor, Cleveland, Ohio 44113.

13. Rocket Farms Herbs, Inc. is a California corporation.

14. US Herbs maintains its primary place of business in Grandville, Michigan.

15. 2003 Riverside Capital Appreciation Fund, L.P. and Riverside Partners, L.L.C. maintain their primary place of business in Cleveland, Ohio.

16. Rockets Farms Herbs, Inc. maintains its primary place of business in Salinas, California.

17. This Court has personal jurisdiction over Defendant Rocket Farms Herbs, Inc. pursuant to Ohio's long-arm statute, specifically Ohio Revised Code § 2307.382(A)(1), (3).

18. This Court has personal jurisdiction over Defendant Riverside Partners, LLC because it maintains its primary place of business in Ohio at 50 Public Square, 29th Floor, Cleveland, Ohio 44113.

19. This Court has personal jurisdiction over Defendant 2003 Riverside Capital Appreciation Fund, L.P. because it maintains its primary place of business in Ohio at 50 Public Square, 29th Floor, Cleveland, Ohio 44113.

20. Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, because the contract between the parties contains a choice of law provision which elects Ohio law, and because Defendants are subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

21. The Riverside Company is a global private equity firm.

22. The Riverside Company and its subsidiaries control a portfolio of businesses which includes more than 75 companies.

23. Since its founding, The Riverside Company has invested in more than 380 transactions worldwide.

24. The Riverside Company's business model centers on quickly purchasing companies and reselling them or their assets for profit.

25. The Riverside Company and its subsidiaries have entered and exited at least 114 companies since its founding.

26. The Riverside Company generally holds a company for three to five years before selling it or its assets.

27. In or about April, 2008, The Riverside Company caused its subsidiary 2003 Riverside Capital Appreciation Fund, L.P. to purchase Herb Thyme Farms, Inc. (hereinafter "H. Thyme"), a Delaware Corporation.

28. H. Thyme was in the business of supplying fresh herbs to supermarkets nationally.

29. On or about August 2, 2010 US Herbs entered into a Supply and Licensing Agreement with H. Thyme (hereinafter the "Contract"). A true and accurate copy of the Contract is attached hereto as Exhibit A.

30. The agreement provided that H. Thyme would be the exclusive supplier of packaged fresh herbs to US Herbs' clients.

31. The initial term of the Contract was from August 2, 2010, until August 1, 2015.

32. The Contract provided that H. Thyme was obligated to pay US Herbs each month based on its distribution of herbs according to an agreed upon schedule.

33. The Contract further provided that H. Thyme would service US Herbs' existing customers, which included Hiller's Markets, Horracs's Farm Market, Meijer, Spartan Stores, Supervalu, and Walmart.

34. Prior to entering into the Contract, Mati Karni engaged in negotiations with Jordan Owens, an H. Thyme executive.

35. Mr. Owens assured Mr. Karni that H. Thyme was among the largest providers of fresh herbs in the United States, that H. Thyme would be able to service US Herbs' customers, and that H. Thyme was a very reliable provider of fresh herbs.

36. Mr. Karni specifically asked Mr. Owens if there were any issues he should be aware of prior to contracting with H. Thyme that might cause H. Thyme to be unable to service US Herbs' customers.

37. Mr. Owens assured Mr. Karni that H. Thyme was ready and capable of servicing US Herbs' accounts and that there were no issues US Herbs should be concerned about prior to contracting with H. Thyme.

38. Prior to entering into the Contract, H. Thyme failed to disclose preexisting business disputes between H. Thyme and US Herbs' customers.

39. Prior to entering into the Contract, H. Thyme failed to disclose a preexisting business dispute between H. Thyme and Walmart, a significant US Herbs customer.

40. Prior to entering into the Contract, H. Thyme failed to disclose a pending class action lawsuit which alleged H. Thyme mislabeled conventionally farmed herbs as organically farmed.

41. Prior to entering into the Contract, H. Thyme concealed the existence of the class action lawsuit and H. Thyme's preexisting business disputes with US Herbs' customers from US Herbs.

42. US Herbs could not have become aware of H. Thyme's preexisting business disputes.

43. US Herbs would not have agreed to do business with H. Thyme or The Riverside Company had Mr. Owens been truthful regarding H. Thyme's significant problems and poor reputation in the industry.

44. After entering into the Contract, H. Thyme began servicing US Herbs' customers and delivering fresh herbs.

45. H. Thyme was unable to reliably fill orders for US Herbs and repeatedly delivered poor quality herbs to US Herbs' customers.

46. H. Thyme delivered diseased basil to US Herbs' customer Spartan Stores which caused US Herbs to lose Spartan Stores' account due to the unacceptable quality of the herbs delivered.

47. H. Thyme delivered poor quality herbs to Walmart which did not comply with Walmart's quality standards.

48. US Herbs received a communication from Walmart which stated:

> It has come to our attention that Herb Thyme is now involved in this process? Why did you not make it known to us that our competitor was supplying Herbs for you? Herb Thyme does not "grow" their Herbs locally and the result is obvious in recent and historic POOR QUALITY deliveries. This is simply not in-line with our goals or WM's goal, to provide Locally Grown Produce.

49. Due to the poor service provided by H. Thyme, H. Thyme's poor reputation in the industry, and H. Thyme's preexisting business disputes with US Herbs' customers, H. Thyme lost 65% of US Herbs' customers including Walmart and Spartan Stores.

50. Understandably, US Herbs ceased payments to H. Thyme to cover its significant loss of revenue.

51. On or about May 31, 2011, following the poor performance by H. Thyme, US Herbs sent a letter to H. Thyme which terminated its contract with H. Thyme due to H. Thyme's failure to perform under the Contract. (Exhibit B)

52. On or about June 6, 2011, H. Thyme responded through counsel and accepted US Herbs' termination of the Contract.  (Exhibit C)

53. On or about July 1, 2011, US Herbs and H. Thyme entered into a second agreement that modified the terms of the original agreement and agreed to continue the relationship (hereinafter "Modification").  (Exhibit D).

54. The Modification was negotiated by George Benson, an executive with The Riverside Company. (Exhibit E)

55. Under the terms of the Modification, H. Thyme was required to continue to service US Herbs' customers and remit payment to US Herbs.

56. From July 2011 until December, 2012, H. Thyme made payments to US Herbs pursuant to the Modification.

57. In or about December 2012, Riverside Partners L.L.C. and its subsidiary 2003 Riverside Capital Appreciation Fund, L.P. decided to sell H. Thyme to Rocket Farms Herbs, Inc.

58. H. Thyme, Riverside Partners L.L.C., and 2003 Riverside Capital Appreciation Fund, L.P. did not inform US Herbs that H. Thyme was being sold.

59. In December 2012, Riverside Partners, L.L.C caused its subsidiary 2003 Riverside Capital Appreciation Fund, L.P. to sell H. Thyme to Rocket Farms Herbs, Inc.

60. In December 2012, Rocket Farms Herbs, L.L.C. completed the purchase of all of H. Thyme's assets.  (Exhibit F)

61. The asset purchase agreement included the assignment of all contracts.

62. The Riverside Partners, L.L.C. and 2003 Riverside Capital Appreciation Fund, L.P. caused H. Thyme to assign its Contract and Modification with US Herbs to Rocket Farms without informing US Herbs or seeking US Herbs' consent.

63. In December 2012, H. Thyme and Rocket Farms ceased making payments to US Herbs without notification.

64. Rocket Farms has continued to distribute herbs to US Herbs' customers, but has not made any further payments to US Herbs.

65. Rocket Farms Herbs, Inc. is the successor of H. Thyme as it purchased all of H. Thyme's assets and continued to service H. Thyme's customers.

66. Rocket Farms Herbs, Inc. expressly agreed to assume H. Thyme's liability to US Herbs when it accepted the assignment of the Contract and Modification and began servicing US Herbs customers.

67. Rocket Farms Herbs, Inc. impliedly agreed to assume H. Thyme's liability to US Herbs when it accepted the assignment of the Contract and Modification and began servicing US Herbs customers.

68. The sale of H. Thyme to Rocket Farms Herbs, Inc. was a de facto consolidation or merger as Rocket Farms Herbs, Inc. has continued H. Thyme's business and continues to service all of H. Thyme's customers.

69. Rocket Farms Herbs, Inc. is merely a continuation of H. Thyme as Rocket Farms Herbs, Inc. has purchased all of H. Thyme's assets and continued to service all of H. Thyme's customers.

70. The sale of H. Thyme to Rocket Farms Herbs, Inc. was entered into fraudulently for the purpose of escaping liability because H. Thyme and The Riverside Company knew that H. Thyme was the defendant in a class action lawsuit which threatened its viability as a business.

71. As a result of Defendants' failure to make payment to US Herbs and loss of US Herbs' customers, US Herbs' business was severely damaged and US Herbs' farms were lost to foreclosure.

72. After causing the destruction of US Herbs' business for their own profit, internal communications between executives at the Riverside Company referred to Mr. Karni as a "nut job," a "piece of work," and "entertainment." (Exhibit G)

73. After reading a news story regarding the failure of US Herbs and the loss of Mr. Karni's family farm (Exhibit H), Jordan Owens sent an email to George Benson which stated "[t]his guy is like a bad penny, the press release was amusing though. We should hook up for lunch sometime." (Exhibit I).

74. On June 20, 2014 US Herbs filed a lawsuit in the Cuyahoga County Court of Common Pleas, Case No. CV-14-828703, against H. Thyme, The Riverside Company, and Rocket Farms which asserted causes of action for breach of contract, tortious interference with contract, tortious interference with business relationships, unjust enrichment, and conversion.

75. The claims asserted in that case were substantially the same as those asserted here.

76. On August 5, 2015, US Herbs voluntarily dismissed its case without prejudice and with the right to refile.

77. Pursuant to Ohio's saving statute, R.C. 2305.19, US Herbs may commence a new action within one year from the date the prior case was dismissed.

**COUNT ONE: TORTIOUS INTERFERENCE WITH CONTRACT**
**(All Defendants)**

78. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

79. A contract existed between US Herbs and H. Thyme in the form of the Contract and the Modification.

80. Defendants had knowledge that a contract existed between US Herbs and H. Thyme.

81. George Benson, an executive with The Riverside Company negotiated the Modification between US Herbs and H. Thyme.

82. Defendants intentionally procured H. Thyme to breach its contract with US Herbs.

83. Defendants negotiated the sale of all of H. Thyme's assets to Rocket Farms Herbs, Inc. which left H. Thyme unable to perform its contract with US Herbs or service any of US Herbs customers.

84. Defendants had no justification to procure H. Thyme to breach its contract with US Herbs.

85. Defendants were motivated to quickly sell the assets of H. Thyme due to its declining reputation and pending class action lawsuit.

86. As a direct and proximate result of Defendant's procurement of H. Thyme's breach, US Herbs has suffered damages.

87. H. Thyme's breach caused US Herbs to be unable to supply its customers which resulted in the failure to US Herbs' business.

88. US Herbs is entitled to economic, noneconomic, and punitive damages in an amount in excess of $75,000 to be determined at trial and reasonable attorney fees.

**COUNT TWO: TORTIOUS INTERFERENCE WITH CONTRACT**
**(All Defendants)**

89. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

90. Contracts existed between US Herbs and its customers.

91. US Herbs had contracts to supply fresh herbs to a variety of local and national retailers including Hiller's Markets, Horrocks Farm Market, Meijer, Spartan Stores, Supervalue, and Walmart.

92. Defendants had knowledge that contracts existed between US Herbs and its customers.

93. George Benson, an executive with The Riverside Company, negotiated the Modification between US Herbs and H. Thyme for H. Thyme to supply US Herbs' customers.

94. Defendants intentionally procured the breach of US Herbs contracts with its customers.

95. Defendants caused all of the assets of H. Thyme to be sold to Rocket Farms Herbs, Inc. which left H. Thyme unable to service US Herbs' customers as required by US Herbs' contracts with its customers.

96. Defendants had no justification to procure the breach of US Herbs contracts with its customers.

97. Defendants were motivated to quickly sell the assets of H. Thyme due to its declining reputation and pending class action lawsuit.

98. As a direct and proximate result of Defendants' procurement of the breach, US Herbs has suffered damages.

99. Defendants' actions caused US Herbs to be unable to supply its customers which resulted in the failure to US Herbs' business.

100. US Herbs is entitled to economic, noneconomic, and punitive damages in an amount in excess of $75,000 to be determined at trial and reasonable attorney fees.

**COUNT THREE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**
**(All Defendants)**

101. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

102. Business relationships existed between US Herbs and its customers.

103. US Herbs had business relationships with a variety of retailers including Hiller's Markets, Horrocks Farm Market, Meijer, Spartan Stores, Supervalue, and Walmart.

104. Defendants had knowledge that business relationships existed between US Herbs and its customers.

105. George Benson, an executive with The Riverside Company, negotiated the Modification agreement for H. Thyme to service US Herbs' customers.

106. Defendants intentionally interfered with US Herbs business relationships with its customers causing a termination of those relationships.

107. Defendants caused all of H. Thyme's assets to be sold to Rocket Farms Herbs, Inc. which left H. Thyme unable to service US Herbs' customers as agreed in the Modification.

108. H. Thyme's failure to service US Herbs' customers interfered with the business relationship between US Herbs and its customers.

109. Rocket Farms Herbs, Inc. interfered with the business relationship between US Herbs and its customers when it began servicing US Herbs customers without authorization or payment to US Herbs.

13

110. As a direct and proximate result of Defendant's interference with US Herbs' business relationships with its customers US Herbs has suffered damages.

111. Defendants' interference with US Herbs' business relationships cause US Herbs to lose its customers which resulted in the failure of US Herbs' business.

112. US Herbs is entitled to economic, noneconomic, and punitive damages in an amount in excess of $75,000.00 to be determined at trial and reasonable attorney fees.

**COUNT FOUR: BREACH OF CONTRACT**
**(Rocket Farms Herbs, Inc.)**

113. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

114. US Herbs entered into the Contract and Modification with H. Thyme.

115. The Modification allowed for the continuation of the Contract following the termination by US Herbs.

116. US Herbs fully performed its material obligations under the Contract and Modification.

117. US Herbs allowed H. Thyme to service its customers as agreed in the Contract and Modification.

118. Rocket Farms Herbs, Inc. is the successor of H. Thyme.

119. Rocket Farms Herbs, Inc. assumed the Contract and Modification with US Herbs when it began shipping herbs to US Herbs' customers as agreed in the Contract and Modification following its purchase of H. Thyme.

120. H. Thyme and Rocket Farms Herbs, Inc. breached the Contract by failing to make payment to US Herbs as required pursuant to Sections 10(f), 11(f), 12(e) of the Contract.

121. H. Thyme and Rocket Farms Herbs, Inc. breached the Contract by failing to obtain prior written consent from US Herbs prior to assigning rights and obligations, pursuant to Section 21 of the Contract.

122. H. Thyme and Rocket Farms Herbs, Inc. breached the Modification by failing to make payments to US Herbs as required by Sections 2.1 and 2.2 of the Modification.

123. H. Thyme and Rocket Farms Herbs, Inc. breached the Contract by failing to protect US Herbs' brand with its current customers pursuant to Section 9(a) of the Contract.

124. H. Thyme and Rocket Farms Herbs, Inc. breached the Contract and the Modification by breaching the implied covenant of good faith and fair dealing.

125. US Herbs has suffered damages as a result of H. Thyme and Rocket Farms Herbs, Inc. breaches.

126. US Herbs is entitled to payment for all shipments made to US Herbs customers by H. Thyme and Rocket Farms Herbs, Inc. as agreed in the Contract and Modification.

127. As a result of H. Thyme and Rocket Farms Herbs, Inc.'s breach of the Contract and Modification, US Herbs lost all of its customers resulting in the failure of US Herbs' business.

128. Rocket Farms Herbs, Inc. is liable to US Herbs for its damages in an amount in excess of $75,000 to be determined through trial.

**COUNT FIVE: UNJUST ENRICHMENT**
**(Rocket Farms Herbs, Inc.)**

129. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

130. US Herbs conferred benefits on H. Thyme and Rocket Farms Herbs, Inc. when H. Thyme and Rocket Farms Herbs, Inc. retained payments from US Herbs clients which were due to US Herbs.

131. H. Thyme and Rocket Farms Herbs, Inc. were aware that they were receiving a benefit when they retained payments from US Herbs' customers and did not remit payment to US Herbs.

132. H. Thyme and Rocket Farms Herbs, Inc.'s retention of the benefit under the circumstances described herein would be unjust.

133. US Herbs should be repaid at least the full amount of the payments Defendants received from US Herbs' clients together with all accrued interest.

**COUNT SIX: FRAUDULENT INDUCEMENT**
**(Riverside Partners, LLC, 2003 Riverside Capital Appreciation Fund, L.P.)**

134. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

135. Defendants had a duty to disclose any known business disputes with US Herbs' customers prior to US Herbs entering into the Contract.

136. Defendants had a duty to disclose the fact that H. Thyme was the defendant in a class action lawsuit which alleged it mislabeled conventionally farmed herbs as organic.

137. Defendants failed to disclose known business disputes with US Herbs' customers prior to US Herbs entering into the Contract.

138. Defendants failed to disclose the existence of the class action lawsuit prior to US Herbs entering into the Contract.

139. The fact that H. Thyme had existing business disputes with US Herbs' customers was material to the Contract, because US Herbs would not have entered into the Contract had it known of the business disputes.

140. The fact that H. Thyme was the defendant in the class action lawsuit was material to the Contract, because US Herbs would not have entered into the Contract had it known of class action lawsuit.

141. Defendants were aware that they were failing to disclose material information to US Herbs.

142. Defendants intended to induce US Herbs to rely on their failure to disclose so as to induce US Herbs to enter into the Contract.

143. Defendants intended to induce US Herbs to rely on their failure to disclose so as to gain access to US Herbs customers.

144. US Herbs justifiably relied on Defendants misrepresentations and entered into the Contract.

145. As a direct and proximate result of US Herbs' reliance on Defendant's failure to disclose the preexisting business disputes, US Herbs suffered damages including the loss of all of its customers.

146. As a direct and proximate result to US Herbs' reliance on Defendant's failure to disclose the existence of the class action lawsuit, US Herbs' suffered Damages including the loss of all of its customers.

147. US Herbs is entitled to economic, noneconomic, and punitive damages in an amount in excess of $75,000 to be determined at trial and reasonable attorney fees.

**COUNT SEVEN: FRAUD**
**(Riverside Partners, LLC, 2003 Riverside Capital Appreciation Fund, L.P.)**

148. Plaintiffs incorporate all other paragraphs as though fully rewritten here.

149. Defendants had a duty to disclose any known business disputes with US Herbs' customers prior to US Herbs entering into the Contract.

150. Defendants had a duty to disclose the fact that H. Thyme was the defendant in a class action lawsuit which alleged it mislabeled conventionally farmed herbs as organic.

151. Defendants failed to disclose known business disputes with US Herbs' customers prior to US Herbs entering into the Contract.

152. Defendants failed to disclose the existence of the class action lawsuit prior to US Herbs entering into the Contract.

153. Defendants' failure to disclose the known business disputes and class action lawsuit prior to US Herbs entering the into the Contract was material to the transaction at hand because US Herbs would not have done business with H. Thyme had US Herbs been made aware of H. Thyme's problems.

154. Defendants Represented to US Herbs that H. Thyme was able to service US Herbs' customers.

155. Defendants were aware that their representations were false as they were aware of the class action lawsuit and H. Thyme's business disputes.

156. Defendants intended to induce US Herbs to rely on their misrepresentations and omissions in order to gain access to US Herbs' customers.

157. US Herbs was justified in its reliance on Defendants misrepresentations and omissions when it chose to use H. Thyme to supply its customers.

158. As a direct and proximate result to US Herbs' reliance on Defendant's misrepresentations and omissions, US Herbs' suffered Damages including the loss of all of its customers.

159. US Herbs is entitled to economic, noneconomic, and punitive damages in an amount in excess of $75,000 to be determined at trial and reasonable attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Court:

A. Assume jurisdiction of this case;

B. Grant judgment in favor of Plaintiffs on all claims and for the remedies sought in each claim;

C. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

D. Enjoin Defendants from distributing herbs to Plaintiffs' customers;

E. Award Plaintiffs actual damages in an amount to be determined at trial and with the appropriate multiplier, in excess of $75,000.00 exclusive of interest and costs;

F. Grant Plaintiffs the maximum economic, non-economic, actual, statutory, emotional, general, punitive, and other damages available;

G. Award Plaintiffs attorney fees with the appropriate multiplier plus costs and expenses of litigation; and

H. Award such other relief, as the Court deems appropriate.

Dated: December 11, 2015

    Respectfully submitted,
    DOUCET & ASSOCIATES CO., L.P.A.


    s/ Troy J. Doucet
    Troy J. Doucet, Trial Counsel (0086350)
    *Attorney for Plaintiffs*
    700 Stonehenge Parkway, Suite 2B
    Dublin, OH  43017
    PH (614) 944-5219
    FAX (818) 638-5548
    Troy@TroyDoucet.com

## **JURY DEMAND**

Plaintiffs demand that all claims and issues be tried to a jury.


s/ Troy J. Doucet
Troy J. Doucet (0086350)